The opinion of the Court was delivered by
Richardson, J.
This case presents a question arising out of the Act of 1698, P. L. p. 3, 1 Brev. Dig. 165,[1] to wit, where should mortgages of leasehold estates be recorded ? In the office of the Register of Mesne Conveyance, or in that of the Secretary of State ?
The words of the Act are, “ that, that sale, conveyance, or mortgage, of lands and tenements, except original grants, which shall be first regis^ered ^11 Register’s *offiee in Charleston, shall be taken, deemed, adjudged, allowed of, and held to be the first sale, conveyance and mortgage, and to be good, firm, substantial and lawful, in all Courts of judicature within South Carolina, any former or other sale, conveyance, or mortgage, of the same land, not before registered, notwithstanding ; and that, that sale or mortgage of negroes, goods, or chattels, which shall be first recorded in the Secretary’s office in Charleston, shall be taken, deemed, adjudged, allowed of, and held to be the first mortgage, and good, firm, substantial and lawful, in all Courts of judicature within South Carolina, any former or other sale, or mortgage, for the same negroes, goods and chattels, not recorded in the'said office, notwithstanding.”
It is admitted, that chattel, in its extended meaning, embraces leasehold estates, as well as movable personal property, and is divided into real and personal chattels ; the former being a leasehold estate. Still, a custom has prevailed, ever since the passing of the Act, of recording mortgages of leasehold estates in the Register’s office; and when recorded in the Secretary’s office, which has been comparatively very rarely done, the same mortgages have generally been, also, recorded in the Register’s office. To support this custom, and to avoid the many inconveniences which would follow from a disregard of one of such long standing, is not only desirable, but important to justice. '
Can the custom be supported consistently with legal principles ? In the construction of an ancient Act of the Legislature, any usage,under a supposed construction of the Act,’ is to be regarded. It shows, not only the general understanding, but presupposes, an early exposition given by the learned men of the day ; for at all times, man acts with caution in securing his property; and we can scarcely suppose so old and continued a practice, without the sanction of respectable opinions — at least, it is no irrational conclusion. Cotemporaneous expositions are the best, says the most venerable authority; and early, long and uniform custom, surely n0‘ inferior proof of the interpretation made about the time of the passing of the Act. When uniform, it is but little inferior to learned interpretations published to the world at length ; either will be respected, unless absurd, or clearly groundless.
*279 Is the custom of recording mortgages of leasehold estates in the Register’s office groundless or absurd ? And ought such mortgages to be recorded in the Seererary’s office ? The words of the Act are, “ negroes, goods or chattels.” The word, “ negroes, has a fixed meaning, (slaves.) “ Goods,” here, means evidently what is usually understood by goods, wares and merchandise ; both these words clearly mean personal property, of a particular kind, and are both very limited in their signification ; neither would embrace horses, cattle, plate, household furniture, and the like, with sufficient clearness. Some generic term was wanting to include all these, and many other species of mere personal property, not understood to be within the meaning of “ negroes, or goods;” the word “ chattels” was adopted, as having a very extensive signification : so extensive that it may often mean chattels real, or leasehold estates. But it is a sound rule of interpretation, that when an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces only things “ ejusdem generis,” i, e. of the same kind or species, with those comprehended by the preceding limited and confined terms. In a word, the last is restricted to the subject matter of the preceding terms. Now the terms, “negroes,” and “ goods,” are each confined to a known class of strictly personal estate; and the term, “ chattels,” following them immediately, means chattels “ ejusdem generis,” that is, personal chattels. Suppose the words had been negroes, goods, horses, cattle, furniture, and other “chattels,” would it be questioned, that personal chattels only were meant ?
*Having excepted leasehold estates out of the term chattels in the present instance, let us see if such estates can be comprehended by the term “ lands or tenements.” Whether, in its strict, technical import, the term “ land,” does require duration of estate, as well as terra firma, seems not altogether understood. I will, therefore, endeavor to explain it. Blackstone says “ it comprehends all things of a permanent, substantial nature ;” and he immediately after makes duration of estate indispensable to the definition of tenement. 2 Black. Com. pp. 16 and 11. He says, “ all corporeal hereditaments may be included under the general denomination of land,” and he defines hereditament to be “ whatever may be inherited; thus, we have, plainly, the indispensable characteristic both of hereditament and tenement. But land is defined, at least as yet, without reference to authority, and only in general terms. Afterwards, the great commentator, quoting 1 Inst, says, “ Land comprehendeth any ground, soil or earth whatsoever ; and after several instances, and describing its extent upwards and downwards, (cujus est solum, &c.,) he concludes thus, “ by the name land, which is nomen generalissimum, every thing terrestrial will pass.” Turning to the first Inst. e. 1, sec. 1, we ñndland thus defined, “ Terra est nomen generalissimum et comprehendit omnes species terree;” and in Co. 9 Rep. Aldred’s case, we find the peculiar privilege of every owner of land, “cujus est solum ejus est usque ad coslum.” Finch, p. 130, says, “ Land is a tenement or manual occupation,” which is not quite clear : but afterwards, he describes it altogether by the physical matter it com *280 prebends. Not one of these defines the term land as descriptive of a particular estate, or class of estates, but merely as the terraqueous subject matter of real estates. In other words, land is the physical thing out of which all terrene estates are formed, from a freehold of inheritance down to a tenancy at will; but is not in itself descriptive of any given estate or estates. Turn to a professional dictionary, and you find ^al1^ defined, first, by its physical properties, comprehending *what nature has annexed to it, above and below, as water, the natural growth, and the like, and whatever structures man places upon it for permanent use. 2. As conferring upon the legal possessor, exclusively, the permanent use of the expanse perpendicularly above his landed possession ; all of which belongs to every estate consisting of land. The whole error appears to me to arise from land being apparently classed by the. commentator with tenement and hereditaments, which are truly descriptive of estates: whereas, after looking into his true meaning, we may as well confound the terms, castle* messuage, or any other name of a specific thing, which is the subject of estates, with terms significant of estates. The former is the mere material of the estate ; the latter directs the legal right in the use of the estate.
If I am correct in this distinction, which appears so plain, that I should apprehend, I had taken needless pains to point it out, had I not felt it a duty to do so, because the construction of the statute appears to have been very much questioned, it follows irresistibly, that the words, “ mortgage of land,” in the statute, mean the mortgage of any estate in land, from a freehold down to a term for years ; for the last is as much an estate in land as any other. See 2 Comm, title, “ Estates less than freehold.” Indeed, I might add, in the language of the commentator, “ by the name of land, every thing terrestrial will pass,” as perfectly applicable to the act before us.
But suppose I am mistaken, and that land signifies an estate as well as earth and matter; it would still be nomen generalissimum, and might, in its most extended sense, include leasehold estates; for how would we divide it, but as Blackstone has done, (if he has used it in that sense at all,) into freehold, and estates less than freehold, which last iuclude terms for years. May it not, I say, thus used in its most enlarged acceptation, include leases ? For it is to be remembered, that, in construing this part of the statute, the rule should be the converse of that use(^ ^11 expounding the word *“chattels,” succeeding “negroes and goods.” There the enumeration of these particulars restricted chattels to its confined sense, “ ejusdem generis.” But when we come to “ lands and tenements,” the subject matter of the' mortgage is not only changed, but the style; and instead of an enumeration of particulars preceding, we find nothing but the generic terms, “ lands ' and tenements,” unrestricted. These, then, must be expounded in their enlarged signification ; and we should, if necessary, eveu seek to extend them to the utmost, in order to advance the means held out to.prevent frauds in this remedial act.
I will not exhaust time in defining the term, “tenement.” It does not appear to me to comprehend terms for years. See 2 Black, Com. 16 and 17 ; 1 Inst. 19 and 20. Yet even here, there must be a doubt, at least, *281 when we see in 2 John. Rep. p. 514, the Chancellor speaking upon the very subject before us, in expounding a similar Act, says, “ mortgages of lands, tenements and hereditaments are required to be registered, and the word tenement in its technical signification, undoubtedly includes estates for years;” (Johnson v. Stagg;) and Chief Justice Kent, on the appeal in that case, though he admits that by the rule of the old common law, those words would not comprehend leases for years ; p.'522; yet after reviewing the reported cases in point, concludes in these words : “ These cases prove, then, that the words, ‘lands and tenements,’ may, in certain cases, either in a deed or will, comprehend an estate for years, and I think, said he, it will be admitted that a mortgage of a term for years is within the reason and spirit of the Registry Act, because it is equally, within the mischief.” So that, after great consideration under the New York Registry Act, leases for years were holden to come within the meaning of tenements, by virtue of the spirit of the Act. In Doe v. Williams, 1 H. Blackstone’s Reps. 25, in a deed it was held, that “lands and meadows” would carry a term for years. In Turner v. Husler, 1 Bro. C. C. 78, Baron Eyre says, under lands and tenements in a devise, *there is no good reason, when there is a freehold and leasehold, why both should not pass. The old rule was, that the former alohe should pass.
Hunt, for the motion. Heath, contra.
In reviewing these adjudged cases, I cannot but remark, and feel the force of the remark, that they are very modern cases, and suppose an extension of the terms, “ lands and tenements,” since the passing of our Act in 1698, and therefore may not apply, in all their force, to so old an Act.” But in the case of Partridge v. Strange & Crocker, in 1 Plow. 78, decided in the reign of Edward YL, after a profusion of learned argument upon the construction of the words, “ lands, tenements and hereditaments,” it was held in a very penal statute, 37 Hen. 8, c. 9, “against buying or selling pretended titles,” that these words include a lease for years, because within the mischief of that statute.
I must then conclude from adjudications, ancient and modern, that tenements in many instances include leases for years ; and being satisfied that the scope and spirit of the Act of 1698 will warrant such a construction, even should its letter not explicitly authorize it, the unanimous opinion is, that the motion should be dismissed.
The other judges concurred.
See Steele v. Mansell, 6 Rich. 446, and cases cited there.

 Stat. 137.